MILL FACTORS CORPORATION, APPELLANT, v. THE
GUARDIAN TRUST COMPANY ET AL., RESPONDENTS.

Argued October 29, 1930—Decided April 10, 1931.

"This case was argued upon an agreed state of facts which
are made a part of this decision, but which for purposes of
convenience may be shortly stated as follows:

"The goods sought to be replevied consisted of three hun-
dred and four gross of toy locomotives manufactured by the
Nonpariel Toy and Novelty Company and thereafter sold
by it to the Ferdinand Strauss Corporation, and were retained
by Nonpariel Toy and Novelty Company until on or about
April 12th, 1927, on which date the Strauss company, being
indebted to Mill Factors Corporation in a large sum of
money for advances and outlays made and commissions
earned, and in pursuance of an agreement entered into be-
tween Strauss and Mill Factors on March 28th, 1925, Strauss
"Consigned" on that date to Mill Factors Corporation the
said toy locomotives, but no actual delivery thereof was made
by Nonpariel to Mill Factors, but Nonpariel continued to
hold the said goods which were at that time stored in its
warehouse, and endorsed upon its invoice of said toy locomo-
tives to Ferdinand Strauss Corporation, dated April 1st,
1927, the following: 'The above merchandise is stored in
our warehouse in the name of Mill Factors Corporation
awaiting their shipping instructions.'

"Thereafter and while the goods were still in the posses-
sion of Nonpariel (having been continuously in its possession
from the date of sale on April 1st, 1927), and on the 19th
day of December, 1927, the Ferdinand Strauss Corporation,
being indebted to the Guardian Trust Company, the defend-
ant in this suit, in the sum of $7,268.74, a writ of attach-

ment was issued out of the Essex County Circuit Court by the Guardian Trust Company of Newark, New Jersey, in an action against the Ferdinand Strauss Corporation, and under and by virtue of that writ, the three hundred and four gross of toy locomotives were attached. Thereafter, on the same day, Liberty Trust Company became an applying creditor in the sum of $13,545.64 and the Manufacturers Trust Company became an applying creditor in the sum of approximately $4,500 for indebtedness incurred by the Strauss corporation. The defendant in the attachment suit, the Ferdinand Strauss Corporation, did not appear nor defend it. An auditor was appointed by the Essex County Circuit Court, which auditor on May 14th, 1928, found that there was due to the Guardian Trust Company a total of $7,285.69; to the Washington Trust Company a total of $13,442.10; and to the Manufacturers Trust Company a total of $4,622.85. Thereafter, in said cause, a rule for judgment was duly signed and entered confirming the auditor's report and entering judgment by default for the plaintiff and the applying creditors in the amounts set forth in said auditor's report. Thereafter the plaintiff herein, Mill Factors Corporation, commenced this action in replevin against the Guardian Trust Company, Conrad Deuchler, individually and as sheriff of Essex county; Liberty Trust Company and Nonpariel Toy and Novelty Company, alleging that on January 16th, 1928, plaintiff was and ever since had been, the owner of the said goods and lawfully entitled to the immediate possession of the same, and that the defendant wrongfully took said goods and chattels from the possession of the plaintiff and wrongfully detained them, &c.

"The facts further show that Mill Factors Corporation and Ferdinand Strauss Corporation were both corporations of the State of New York. Nonpariel Toy and Novelty Company is a corporation of the State of New Jersey, and was and is doing business in the State of New Jersey, and its factory and storehouse, where the goods in question were manufactured and continuously stored, are in the State of New Jersey.

"The plaintiff claims the right to the possession of these goods under and by virtue of an agreement made between the Strauss corporation, under date of March 28th, 1925, as modified by a further agreement dated October 20th, 1926, which constituted Mill Factors Corporation the sole and exclusive factor of Strauss corporation, which corporation agreed to consign and deliver to the Factor for sale on commission, free of all liens, and charges at the premises of Mill Factors Corporation in New York or at such other place or places as might be designated by the Factor, all goods belonging to the consignor or which might be thereafter acquired by it or the sale of which it might control.

"It also provided that the Factor should 'at all times have the exclusive possession and control of said consigned goods, and as security for its advances now or hereafter made,' and that the Factor should at all times have a general lien upon all of the consigned goods.

"It also appears that there was given in New York by Mill Factors Corporation the notices required under section 45 of the Personal Property law of the State of New York, which required notice of liens upon merchandise or the proceeds thereof to secure loans or advances to be given in accordance with that act.

"It further stipulated that none of the notices either by signs or filing 'with the officer designated in section 232 of the Lien law in every town or city where the merchandise subject to the lien * * * is or at any time shall be located, kept or stored' were given at the warehouse of Nonpariel or in the city or county in which the goods were kept and stored. From these facts and those in addition appearing in the stipulation of facts the plaintiff claims the right to the possession of these goods under the agreement either as a chattel mortgagee or pledgee.

"Regardless of the instructions of Strauss corporation to Nonpariel company and the endorsement by Nonpariel on schedule F that 'the above merchandise is stored in our warehouse in the name of Mill Factors Corporation awaiting their shipping instructions,' the consignment of the goods in ques-

tion from Strauss to Mill Factors was in no sense a sale or a conditional sale, but was, as noted upon schedule G, to be held subject to Mill Factors Corporation 'lien for advances, outlays and commissions.'

"It is not necessary to decide what the situation would have been had the same thing occurred in New York, as the New York statutes cannot apply to the present case, as the goods in question were at all times in the State of New Jersey; but it may be interesting to note that if the goods in question had been attached in that state, under the same circumstances, the plaintiff in this case probably could not have succeeded in its replevin suit, unless possession of the goods had been delivered to it as the lienor, as section 45 of the Personal Property law of that state required that where there has not been delivery to or possession on the part of the lienor there shall be placed and maintained in a conspicuous place at the entrance of every building or place where such merchandise shall be located a sign on which shall be printed certain matters required by the statute, and that the notice must be filed as above indicated 'in every town or city where the merchandise subject to the lien * * * shall be located, kept or stored,' neither of which was done in this case.

"It may also be noted that paragraph 17 of the agreement between plaintiff and the Strauss corporation distinctly stated that it is 'especially understood that the sole relation herein created between consignor and factor is that of principal and agent respectively.'

"However, this case must be decided by the laws and decisions of the State of New Jersey.

"While in plaintiff's reply brief it is indicated that there is no intention of relying upon the agreement between it and the Strauss corporation as a chattel mortgage, on page two of the original brief it is suggested that the 'document whereby the said merchandise was pledged by the Strauss corporation with plaintiff as security for advances' may 'be viewed as a chattel mortgage;' but the principal contention is that the plaintiff was a pledgee of these goods.

"I am satisfied that the agreement was not a chattel mortgage in the place where it was made, but was an agreement under section 45 of the New York Personal Property law, and if it was not a chattel mortgage in New York, it is not a chattel mortgage in New Jersey; and even though it were possible for it to be so construed it would be invalid against an attaching creditor, as the goods and chattels involved were always in New Jersey and the agreement was not recorded here, and I am unable to find, under the stipulated facts, that there was a delivery to the plaintiff and an actual and continued change of possession of the goods.

"The goods were produced by the Nonpariel Toy and Novelty Company and held by it for the Strauss corporation after their sale to that company, April 1st, 1927, and although there was a 'consignment' from the Strauss corporation to Mill Factors Corporation, consented to by Nonpariel, the 'consignment' itself provides that the goods were consigned to Mill Factors to be held by them subject to their lien for advances, outlays and commissions, and are to be disposed of in accordance with their agreement with them (referring, of course, to the agreement of March 28th, 1925, as modified by that of October 20th, 1926), of which no notice of any kind, actual or constructive, was given by any one concerned, to the defendant, a creditor of Strauss corporation, or to any other creditor of the Strauss corporation, so far as the facts show.

"These facts, it seems to me, dispose adversely to the plaintiff of its contention that, even though the agreement should not be held to be a chattel mortgage, yet the plaintiff is entitled to the goods as a pledgee of the Strauss corporation.

"Delivery of possession is essential to the existence of a pledge. A contract to pledge, without an actual change of possession, is ineffective as constituting a pledge. 'Such change of possession should be as noticeable as the nature of the transaction will reasonably permit.' *Dirigo Tool Co.* v. *Woodruff*, 41 *N. J. Eq.* 336 (at *p.* 343).

"In this case the court said, at page 343: 'Under our statute nothing short of a registration or an actual and con-

tinued change of possession will operate to create a lien by way of mortgage. While the provisions of this statute are not applicable to pledges, still they display a clear legislative policy in opposition to the creation of secret liens upon personal property. If the transaction now claimed to be a pledge created a lien good against the world, I see no occasion for any creditor to resort to the publicity of the Chattel Mortgage act to obtain security for his debt.'

"It is not contended that the facts in this case constitute a factor's lien at common law. In fact in plaintiff's reply brief that is distinctly disclaimed.

"It being my view that the facts in this case fail to show that the plaintiff legally became either a chattel mortgagee or a pledgee of the goods in question as against an attaching creditor of the Strauss corporation, judgment will be given for the defendants."

For the appellant, *Bilder & Bilder*.

For the respondents, *Stein, McGlynn & Hannoch* and *Wolber & Gilhooly*.

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Judge Dungan in the Circuit Court.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 12.

*For reversal*—None.